1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                               FOR THE DISTRICT OF ARIZONA

8

9    Samuel Antonio Parra,                    )    No. CV 11-716-TUC-JGZ (CRP)
                                              )
10                     Petitioner,            )    **REPORT & RECOMMENDATION**
                                              )
11   vs.                                      )
                                              )
12                                            )
     Charles Ryan; et. al.,                   )
13                                            )
                       Respondents.           )
14                                            )
     _____     )
15

16

17          Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus

18   filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondents have filed an Answer (Doc. 11)

19   and Supplement thereto ("Answer, Exh. A-1") (Doc. 14), and Petitioner has filed a Reply

20   (Doc. 12).

21          Pursuant to the Rules of Practice of this Court, this matter was referred to the

22   undersigned Magistrate Judge for Report & Recommendation.  For the following reasons the

23   Magistrate Judge recommends that the District Court, after its independent review, dismiss

24   and deny Petitioner's Petition for Writ of Habeas Corpus.

25   **FACTUAL & PROCEDURAL BACKGROUND**

26          After a jury trial, Petitioner was convicted in Arizona state court of sexual abuse of

27   a minor under eighteen, two counts of attempted sexual conduct with a minor, molestation

28   of a child, sexual conduct with a minor under fifteen, and sexual abuse of a minor under

fifteen, all involving Petitioner's stepdaughter (the "Victim"). (Answer, Exh. A, pp, 2-3). As summarized by the appellate court, the evidence at trial established that

> [o]ver a period of years, [Petitioner] engaged in repeated acts of sexual conduct with his stepdaughter..., who was either fifteen or younger at the time of the incidents. [Petitioner's] actions included fondling [the Victim] sexually in the home when no one else was around, rubbing his genitals on her back, placing her hand on his genitals, and forcing her to perform an act of oral sex on him. A final incident occurred one morning when [the Victim] was lying in bed. [Petitioner] entered her room and rubbed her body under the covers but over her clothes. He left and then returned a short time later. This time he reached under the covers and under her clothing; touched her in various places, including between her legs; and kissed her on the back. When he left the room the second time, [the Victim] called 911 and reported what he had done. After an investigation, [Petitioner] was charged with and convicted of multiple counts of sexual abuse and sexual conduct stemming from these incidents.

(*Id.* at p. 2). Evidence at trial included testimony from the state's criminalist about the DNA analysis she conducted in the case. (*See* Answer, Exh. A-1 (Doc. 14-1, p.8)). She testified that certain results were consistent with Petitioner's or the Victim's DNA. (*Id.*). The Victim was also among the witnesses who testified. (*See* Answer, Exh. I, p. 7).

Petitioner was sentenced to a total of 37 years of imprisonment. (Answer, Exh. A, p. 2). After his conviction, Petitioner filed a direct appeal raising six ground for relief. (Answer, p. 2 (citing Exh. A); *see also* Exh. A-1 (Doc. 14-1)). On March 13, 2008, the appellate court affirmed Petitioner's convictions and sentences. (*Id.*).

On April 13, 2007, while Petitioner's direct appeal was pending, Petitioner filed a notice of Post-Conviction Relief ("PCR proceeding") (Answer, p. 2 (citing Exh. F)). The trial court stayed the notice pending the outcome of Petitioner's appeal. (Answer, p. 2 (citing Exh. G)). When the direct appeal had been resolved, the trial count appointed counsel to represent Petitioner in the PCR proceeding. (Answer, p. 2). Petitioner's appointed counsel informed the court that he could find no meritorious issues to raise in the PCR proceeding. (Answer, pp. 2-3 (citing Exh. I)). Petitioner then filed a timely *pro se* PCR petition on November 9, 2009. (Answer, p. 3 (citing Exh. J)). Because there were some delays in Petitioner receiving some transcripts regarding his claim that the trial court erred in denying his motion for substitute counsel, the trial court allowed him time to file a supplemental petition. (Answer, p.3).

Before Petitioner filed his supplemental petition, the trial court summarily denied Petitioner's PCR Petition.  (Answer, p.3 (citing Exh. N)).  After the ruling, Petitioner filed two supplemental petitions.  (Answer, p. 3).  In the first, he supplemented his about the denial of the motion to substitute trial counsel.  (Answer p. 3 (citing Exh. P)).  In the second, Petitioner added claims of ineffective assistance of appellate and PCR counsel.  (Answer, p. 3 (citing Exh. R)).

The trial court, recognizing that it had ruled prematurely, reviewed Petitioner's first supplemental petition and denied the claim.  (Answer, p.3 (citing Exh. S)).  The trial court did not review the second supplemental petition.  (Answer, p. 3).  Petitioner filed a motion for rehearing complaining, *inter alia,* that the trial court did not review the second supplemental petition.  (Answer, p. 3 (citing Exh. O)).  In denying the motion for rehearing, the trial court addressed and denied Petitioner's claim raised in his second supplemental petition that appellate counsel had been ineffective.  (Answer, p. 3 (citing Exh. W)).  The trial court did not address Petitioner's claim that PCR counsel had been ineffective.  (*Id.*).

In his petition for review to the appellate court, Petitioner repeated the claims advanced in his PCR filings and added that the trial court had erred by ruling on his PCR petition before receiving his supplemental filings.  (Answer, p. 3 (citing Exh. Z)).  On February 15, 2011, the appellate court granted review and denied relief.  (Answer, pp. 3-4 (citing Exh. E)).

**FEDERAL HABEAS PETITION**

On November 14, 2011, Petitioner filed the instant, timely[1], Petition raising 15 grounds for relief.  Respondents argue that the Petition should be dismissed and denied because: (1) Grounds 1 through 6 were not fairly presented in the state court and, thus, are unexhausted and procedurally defaulted; and (2) Grounds 7 through 15 are without merit.

---

[1]Respondents state the Habeas Petition appears to be timely. (Answer, p.4). Because the Habeas Petition appears to be timely and the Court is not required to raise the statute of limitations *sua sponte*, the Magistrate Judge will not further address the timeliness of the Habeas Petition. *See Day v. McDonough*, 547 U.S. 198, 209 (2006).

1  **EXHAUSTION**

2      Respondents assert that Grounds 1 through 6 are not exhausted. A state prisoner must

3  normally exhaust available state remedies before a federal district court can grant a writ of

4  habeas corpus. 28 U.S.C. § 2254(b)(1); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). To

5  exhaust, a claim must be fairly presented in the proper forum. In Petitioner's case, he must

6  fairly present his claims to the Arizona Court of Appeals by properly pursuing those claims

7  through the state's direct appeal process or through appropriate post-conviction relief.

8  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999); *Roettgen v. Copeland*, 33 F.3d 36,

9  38 (9th Cir.1994). This requirement of exhaustion is designed to give the state an initial

10  opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Picard*

11  *v. Connor*, 404 U.S. 270, 275 (1971).

12      A claim is fairly presented if the petitioner describes both the operative facts and the

13  federal legal theory upon which the claim is based.  *Kelly v. Small,* 315 F.3d 1063, 1066 (9th

14  Cir.2003)*, overruled on other grounds, Robbins v. Carey*, 481 F.3d 1143 (9th Cir.2007). The

15  petitioner must have "characterized the claims he raised in state proceedings specifically as

16  federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir.2000) (emphasis in original),

17  *as modified*, 247 F.3d 904 (9th Cir.2001). "If a petitioner fails to alert the state court to the

18  fact that he is raising a federal constitutional claim, his federal claim is unexhausted

19  regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828,

20  830 (9th Cir.1996). "Moreover, general appeals to broad constitutional principles, such as

21  due process, equal protection, and the right to a fair trial, are insufficient to establish

22  exhaustion."  *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999) (citing *Gray v.*

23  *Netherland*, 518 U.S. 152, 162–163, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)).

24      On direct appeal, Petitioner raised state law issues related to Grounds 1 through 5 of

25  his Habeas Petition; however he did not present any federal grounds for relief on those

26  claims.  (*See* Answer, pp. 5-8; Answer, Exh. A-1 (Doc. 14-1, pp. 7-13)).  With regard to

27  Ground 6, Petitioner claims that his rights under the "5th, 6th, and 14th amendment[s]...as to

28  the due process clause, the confrontation clause, and the equal protection of the laws clause"

1   were violated when the prosecutor stated in the second closing argument that the Victim

2   "never made certain statements until after she had met with defense counsel the year of the

3   trial...." (Petition, p. 11). He argues that the statement was prejudicial. (*Id.*). In the

4   Memorandum attached to his Petition, Petitioner argues that the prosecutor's statement

5   interfered with his Sixth Amendment right to receive effective assistance of counsel.

6   (Memorandum, (Doc. 1-1) p. 11). To the extent Petitioner raises due process, confrontation

7   clause, and equal protection challenges, the record is clear that he did not present the state

8   court with these claims and, therefore, they are unexhausted. (*See* Answer, Exh. A-1 (Doc.

9   14-1, pp. 21-22)). However, Petitioner did argue to the state court that the prosecutor's

10   statement interfered with is Sixth Amendment right to effective assistance of counsel (*see*

11   *id.*); thus, that aspect of Petitioner's Ground 6 claim has been exhausted and will be

12   addressed on the merits.

13        Petitioner's return to state court to raise Grounds 1 through 5 and the unexhausted

14   portion of Ground 6 would be futile given that the claims are precluded as waived under

15   Ariz.R.Crim.P. 32.2(a)(3) because they were not presented on direct appeal or in Petitioner's

16   PCR Petition. Further, presentation of such claims in a second post-conviction relief

17   proceeding would be untimely under Ariz.R.Crim.P. 32.4. *See Beaty v. Stewart,* 303 F.3d

18   975, 987 (9th Cir 2002) (a state post-conviction action is futile when it is time-barred). Nor

19   do the claims qualify for any of the timeliness exceptions. *See* Ariz.R.Crim.P. 32.1(d)-(h).

20   Thus, any additional petition would be subject to summary dismissal. *See State v. Rosario,*

21   195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones,* 182 Ariz. 432, 897 P.2d

22   734 (App. 1995); *Moreno v. Gonzalez,* 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998)

23   (timeliness is a separate inquiry from preclusion). Under such circumstances, the claims are

24   procedurally defaulted.[2] *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir.2007) ("[W]here

25

26        [2]Because these claims are procedurally defaulted pursuant to Rule 32.4(a),
27   Ariz.R.Crim.P., this Court need not determine whether the claims are of "sufficient
     constitutional magnitude" to require a knowing, voluntary, and intelligent waiver. *See e.g.*
28   *Cassett v. Stewart,* 406 F.3d 614 (9th Cir. 2005). Moreover, the procedural timeliness bar of

1    a petitioner did not properly exhaust state remedies and 'the court to which the petitioner

2    would be required to present his claims in order to meet the exhaustion requirement would

3    now find the claims procedurally barred,' the petitioner's claim is procedurally defaulted.")

4    (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 fn. 1 (1991)); *Park v. California,* 202

5    F.3d 1146, 1150-51 (9ᵗʰ Cir. 2000) (federal habeas review is precluded where petitioner has

6    not raised his claim in the state courts and the time for doing so has expired).

7         When a petitioner has procedurally defaulted his claims, federal habeas review occurs

8    only in limited circumstances. "A prisoner may obtain federal review of a defaulted claim

9    by showing cause for the default and prejudice from a violation of federal law." *Martinez v.*

10   *Ryan*, __ U.S. __, 132 S.Ct. 1309, 1316  (2012) (citing *Coleman,* 501 U.S. at 750). "Cause"

11   requires a showing of "some objective factor" which impeded compliance with a procedural

12   rule, such as "a showing that the factual or legal basis for a claim was not reasonably

13   available to counsel" or that there was "some interference by officials." *Murray v. Carrier*,

14   477 U.S. 478, 488 (1986) (internal citations omitted). Prejudice requires "showing, not

15   merely that the errors at his trial created a possibility of prejudice, but that they worked to

16   his actual and substantial disadvantage, infecting his entire trial with error of constitutional

17   dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original).

18   Additionally, a habeas petitioner "may also qualify for relief from his procedural default if

19   he can show that the procedural default would result in a 'fundamental miscarriage of

20   justice.'" *Cook v. Schriro,* 538 F.3d 1000, 1028 (9ᵗʰ Cir. 2008) (citing *Schlup v. Delo,* 513

21   U.S. 298, 321 (1995)). This exception to the procedural default rule is limited to habeas

22   petitioners who can establish that "a constitutional violation has probably resulted in the

23   conviction of one who is actually innocent[.]" *Schlup*, 513 U.S. at 327. *See also Murray,* 477

24   ————————————

25   Rule 32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established. *Powell v.*
     *Lambert*, 357 F.3d 871 (9th Cir.2004); see e.g., *Rosario*, 195 Ariz. 264, 987 P.2d 226 (where
26   petitioner did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be
     summarily dismissed if untimely); *Jones*, 182 Ariz. at 434, 897 P.2d at 736; *see also Wagner*
27   *v. Stewart,* 2008 WL 169639, *9 (D.Ariz. Jan. 16, 2008)*.

28

U.S. at 496; *Cook,* 538 F.3d at 1028. "'To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial.'" *Cook*, 538 F.3d at 1028 (quoting *Schlup*, 513 U.S. at 324).

Petitioner asserts that any failure to exhaust was the result of ineffective assistance of appellate counsel for failure to raise such claims on appeal. (Reply (Doc. 12), p. 3). To rely on ineffective assistance of counsel to excuse a procedural default, the claim of ineffective assistance of counsel for failure to raise the defaulted claims must *itself* have been fairly presented to the state court. *See Edwards v. Carpenter*, 529 U.S. 446, 451–54 (2000) (allegation of ineffective assistance of counsel as cause for procedural default "is itself an independent constitutional claim" and is subject to the same exhaustion requirement as other habeas claims). Although Plaintiff argued ineffective of appellate counsel during the PCR proceeding, he did not argue that appellate counsel was ineffective for failure to raise the federal claims in Grounds 1 through 5 and the defaulted portion of Ground 6. (*See* Answer, Exh. S). Moreover, Petitioner has not demonstrated prejudice, *Frady*, 456 U.S. at 170, or a fundamental miscarriage of justice, *Schlup*, 513 U.S. at 327. Petitioner's procedural default cannot be excused.

**MERITS**

As discussed above, Petitioner exhausted a federal claim with regard to a portion of Ground 6. Additionally, Respondents concede that Petitioner properly exhausted Grounds 7 through 15. (Answer, p. 8). However, Respondents contend that none of these claims merit relief.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may grant a writ of habeas corpus only if the state court proceeding:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333 (2006).

"State-court decisions are measured against...[the Supreme] Court's precedents, as of the 'time the state court renders its decision.'" *Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1399 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the claims on habeas review. Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower courts have decided the issue. *Williams v. Taylor,* 529 U.S. 362, 381 (2000). Nevertheless, while only Supreme Court authority is binding, circuit precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark v. Murphy,* 331 F.3d 1062, 1069 (9th Cir. 2003).

Additionally, section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test. *See Cordova v. Baca,* 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, "[a] state-court decision is contrary to... [the Supreme] Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of...[the Supreme] Court but reaches a different result." *Brown v. Payton,* 544 U.S. 133, 141(2005). "Whether a state court's interpretation of federal law is contrary to Supreme Court authority...is a question of federal law as to which [the federal courts]...owe no deference to the state courts." *Cordova*, 346 F.3d at 929 (emphasis omitted).

Under the second test, "[a] state-court decision involves an unreasonable application of...[the Supreme] Court's clearly established precedents if the state court applies [the Court's] precedents to the facts in an objectively unreasonable manner." *Brown,* 544 U.S. at 141. When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law...." *Cordova,* 346 F.3d at 929.  Further, a federal habeas court can only look to the record before the state court in reviewing a state court decision under section 2254(d)(1). *Cullen*, __ U.S. at __, 131 S.Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before that state court.")(footnote omitted); *Holland v. Jackson*, 542 U.S. 649, 652 (2004)("[W]e have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it.")(citations omitted).

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004)("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."). In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues...[M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (*quoting Taylor,* 366 F.3d at 1000)(emphasis in original).

Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness...." *Taylor*, 366 F.3d at 1000: *see also*

1   28 U.S.C. §2254(c). Thus, factual and credibility determinations by either state trial or

2   appellate courts are imbued with a presumption of correctness. 28 U.S.C. §2254(e)(1);

3   *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002); *Bragg v. Galaza*, 242 F.3d 1082,

4   1078 (9th Cir. 2001), *amended* 253 F.3d 1150 (9th Cir. 2001).

5       Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of

6   mixed questions of law and fact. Such questions "receive similarly mixed review; the state

7   court's ultimate conclusion is reviewed under section 2254(d)(1), but its underlying factual

8   findings supporting that conclusion are clothed with all of the deferential protection

9   ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1)." *Lambert,* 393 F.3d at

10  978.

11  **GROUND 6.** In rebutting Petitioner's closing argument, the prosecutor suggested that the

12  Victim's sister, "Samantha's trial testimony regarding the lengths of time that [Petitioner]

13  spent in [the Victim's] bedroom on the morning she called 911 was inconsistent with her

14  earlier statement to investigators. The prosecutor stated that 'Samantha didn't say anything

15  about the longer time being first or second...until she met with...[Petitioner's counsel]

16  earlier this year." (Answer, Exh. A, p. 10; *see also* Answer, Exh. A-1 (Doc. 14-1, p. 21)

17  (quoting RT, 07/14/2007 at pp. 96-97)). When referring to defense counsel, the prosecutor

18  used his name. (Answer, Exh. A-1 (Doc. 14-1, p. 21)). Defense counsel reserved an

19  objection and later argued that the nature of the prosecutor's statement inappropriately

20  allowed the jury to infer that the defendant's attorney had "tricked" the Victim. (*Id.*). "The

21  [trial] court treated [Petitioner's] objection as a motion for mistrial and denied it, finding

22  the comment did not prejudice [Petitioner] and did not imply [Petitioner's] counsel had

23  engaged in inappropriate questioning." (Answer, Exh. A, p. 10).

24      On direct appeal, Petitioner claimed the prosecutor's statement caused unfair

25  prejudice and  "interfered with [Petitioner's]...Sixth Amendment right to effective

26  assistance of counsel." (Answer, Exh. A-1 (Doc. 14-1), p. 22). The appellate court

27  rejected Petitioner's claim as follows:

28      The goal of the prosecutor's comment appears to have been merely to point

1    out that Samantha's statements to the investigating officers were much closer
2    in time to the incident than her interview or her trial testimony.  And during
     Samantha's testimony, both [Petitioner's] counsel and the prosecutor
3    specifically referred to what Samantha had said during the interview.  The
     prosecutor's comment during closing argument can fairly be regarded as
4    doing nothing more than pointing out facts relevant to the credibility of
     Samantha's various statements.  In any event, to the extent the prosecutor's
5    comment may have been improper, [Petitioner] does not explain how it
     might have influenced the jury other than to suggest, rather implausibly, that
6    it appealed "to the fears or passions of the jury."  We conclude that this
     isolated comment, which was at worst ambiguous, did not influence the
7    verdict and therefore the court did not abuse its discretion in denying
     [Petitioner's] motion for mistrial.

8    (Answer, Exh. A, p. 11).  The appellate court's decision is the last-reasoned opinion on

9    Petitioner's claim.

10       Petitioner claims that the prosecutor's comments interfered with his Sixth

11   Amendment right to effective assistance of counsel.  Petitioner does not explain how this

12   is so, and the state court did not address Petitioner's contention.   Generally, where, the

13   state court rejects "a federal claim without expressly addressing that claim, a federal habeas

14   court must presume that the federal claim was adjudicated on the merits..." for AEDPA

15   purposes unless there is reason to think some other explanation for the state court's decision

16   is more likely.  *See Johnson v. Williams,* __ U.S. __, 133 S.Ct. 1088, 1096 (2013);

17   *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-785 (2011).  Petitioner has provided

18   no reason to rebut the presumption that the appellate court rejected his federal claim on the

19   merits.

20       The "'Government violates the right to effective assistance when it interferes in

21   certain ways with the ability of counsel to make independent decisions about how to

22   conduct the defense.'" *United States v. Stargell,* 738 F.3d 1018, 1023-24 (9th Cir. 2013)

23   (quoting *Perry v. Leeke,* 488 U.S. 272, 279–80 (1989)).  Usually such a claim is raised

24   where the criminal defendant has been prevented from conferring with defense counsel.

25   *See Perry,* 488 U.S. 272; *United States v. Lucas*, 873 F.2d 1279, 1281 (9th Cir.1989).  Just

26   as Petitioner provided no basis as to why the prosecutor's comment influenced the jury, he

27   also fails to explain how the comment interfered with his right to effective assistance of

28   counsel.  Clearly, there was no interference with defense counsel's ability to interview

1   Samantha and, as the state court pointed out, defense counsel was permitted to "refer[] to

2   what Samantha had said during the interview." (Answer, Exh. A, p. 11). On the instant

3   record there is no reason to believe that the prosecutor's comments during rebuttal closing

4   improperly interfered with Petitioner's right to effective assistance of counsel.

5   Accordingly, the state court's decision on this issue was not contrary to, or an unreasonable

6   application of, clearly established federal law. Nor did the state court's decision result in

7   an unreasonable determination of the facts in light of the evidence presented in the state

8   court proceeding. Moreover, even if the claim were subject to de novo review, the claim

9   lacks merit for the same reasons state above.

10  **GROUNDS 7 THROUGH 15.**

11  **NONCOGNIZABLE CLAIMS**. In Grounds 7 through 15, Petitioner alleges his due process

12  rights under the Fifth Amendment were violated. It is the Fourteenth Amendment, not the

13  Fifth Amendment, that protects a person against deprivations of due process by a state. *See*

14  U.S. Const. amend XIV, §1 ("nor shall any State deprive any person of life, liberty, or

15  property without due process of law...."); *Castillo v. McFadden,* 399 F.3d 993, 1002 n.5

16  (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving

17  persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations

18  without due process by the several States."). Because the Fifth Amendment Due Process

19  Clause does not provide a cognizable ground for relief regarding Petitioner's state court

20  conviction, his allegations under the Fifth Amendment Due Process clause must be

21  dismissed.

22  **STATE COURT'S LAST-REASONED DECISION.** Grounds 7 through 15 were raised during the

23  PCR proceeding. The trial court denied Petitioner's claims. On review, the appellate court

24  denied relief stating that Petitioner "fail[ed] to explain how the [trial] court erred in

25  rejecting [his claims]... and, accordingly, has failed to meet his burden of demonstrating the

26  court abused its discretion in doing so." (Answer, Exh. Y, p. 3). Additionally, the

27  appellate court stated that "the trial court correctly rejected [Petitioner's] claims in

28  thorough, well-reasoned minute entries and we find no reason to rehash the court's rulings

1  here." (*Id.*) (citations omitted). Because the appellate court adopted the trial court's

2  rulings, the trial court's orders denying Petitioner's PCR Petition, is the last-reasoned state

3  court decision on this issue. *See Ylst v. Nunnemaker,* 501 U.S. 797, 804 (1991); *State v.*

4  *Whipple,* 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App. 1993)("Under *Ylst* and *Coleman*

5  the federal courts will 'presume that no procedural default has been invoked' when an

6  unexplained order leaves in place an earlier decision on the merits. *Ylst,* 501 U.S. at __, 111

7  S.Ct. at 2594. We presume that the federal courts will do as the United States Supreme

8  Court directs and 'look through' to the superior court ruling to determine whether the issues

9  raised in the federal habeas corpus proceeding were resolved in Arizona courts on the

10  merits or are precluded by procedural default.").

11  **STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL**. Petitioner's Grounds 7 through

12  15 raise claims of ineffective assistance of counsel. The Supreme Court established a

13  two-part test for evaluating ineffective assistance of counsel claims in *Strickland v.*

14  *Washington,* 466 U.S. 668 (1984). To establish that his trial counsel was ineffective under

15  *Strickland*, Petitioner must show: (1) that his trial counsel's performance was deficient; and

16  (2) that trial counsel's deficient performance prejudiced petitioner's defense. *Ortiz v.*

17  *Stewart*, 149 F.3d 923, 932 (9th Cir. 1998)(citing *Strickland*, 466 U.S. at 688, 694).

18  　　To establish deficient performance, Petitioner must show that "counsel made errors

19  so serious..." that "counsel's representation fell below an objective standard of

20  reasonableness" under prevailing professional norms." *Strickland*, 466 U.S. at 687-688.

21  The relevant inquiry is not what defense counsel could have done, but rather whether the

22  decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170,

23  1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have

24  rendered adequate assistance and made all significant decisions in the exercise of

25  reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as]

26  explained that '[r]eview of counsel's performance is highly deferential and there is a strong

27  presumption that counsel's conduct fell within the wide range of reasonable

28  representation.'" *Ortiz,* 149 F.3d at 932 (quoting *Hensley v. Crist,* 67 F.3d 181, 184 (9th

1   Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's

2   perspective at the time of the alleged error and in light of all the circumstances, and the

3   standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381

4   (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort

5   be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

6   of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at

7   the time." *Strickland*, 466 U.S. at 689.

8        Even where trial counsel's performance is deficient, Petitioner must also establish

9   prejudice in order to prevail on an ineffective assistance of counsel claim. To establish

10   prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's

11   unprofessional errors, the result of the proceeding would have been different. A reasonable

12   probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

13   Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable,

14   does not warrant setting aside the judgment of a criminal proceeding if the error had no

15   effect on the judgment." *Id*. at 691. "The likelihood of a different result must be substantial,

16   not just conceivable." *Harrington*, __ U.S. __, 131 S.Ct. at 792. Further, because failure

17   to make the required showing of either deficient performance or prejudice defeats the

18   claim, the court need not address both factors where one is lacking. *Strickland*, 466 U.S.

19   at 697-700.

20        Additionally, under the AEDPA, the federal court's review of the state court's

21   decision is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 689-699

22   (2002). In order to merit habeas relief, therefore, Petitioner must make the additional

23   showing that the state court's ruling rejecting an ineffective assistance of counsel claim

24   constituted an unreasonable application of *Strickland*.  See 28 U.S.C. §2254(d)(1); see also

25   *Cullen*, __ U.S. __, 131 S.Ct. at 1403 (federal habeas court's review of state court's decision

26   on ineffective assistance of counsel claim is "doubly deferential."); *Harrington*, __U.S. at

27   __, 131 S.Ct. at 788 ("Federal habeas courts must guard against the danger of equating

28   unreasonableness under *Strickland* with unreasonableness under § 2254(d). When §

2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.").

In Petitioner's case, the trial court cited *Strickland* when evaluating the claims of ineffective assistance of counsel.  (*See* Answer, Exh. N).  The state court, in applying *Strickland*, applied the correct law to the issue. *See Dows v. Wood*, 211 F.3d 480, 484-85 (9th Cir. 2000) (*Strickland* "is considered in this circuit to be 'clearly established Federal law, as determined by the Supreme Court of the United States' for purposes of 28 U.S.C. § 2254(d) review.").

**CLAIMS REGARDING PRIOR CPS INVESTIGATION AND THE DIARY: GROUNDS 7, 11 & 13.**

Many of Petitioner's claims involve the same set of facts surrounding a CPS investigation which began when the Victim's biological father discovered that the Victim's diary contained an entry referring to sexual abuse by Petitioner and forwarded a photocopy of the entry to CPS.[3]  (Answer, Exh.  N, p. 3 n. 2).  CPS investigators interviewed the Victim who "denied that anything had happened and that the diary entry was hers."  (*Id.*). In his PCR Petition, Petitioner cited a 2001 letter from CPS ("CPS Letter") indicating that the investigation was closed because allegations that Petitioner sexually abused the Victim could not be substantiated.[4]  (*Id.; see also* Answer, Exh. K (CPS Letter)).

**Ground 7.**  Petitioner claims that trial counsel was ineffective for failure to interview witnesses from CPS, and a counselor and psychologist from Counseling and Consultants. (Petition, (Doc. 1), p. 12). He also argues that counsel was ineffective for failure to review

---

[3]The diary entry reflected how the Victim "felt about her mother and stepfather [*i.e.,* Petitioner]."  (Answer, Exh. I, p. 5).  The Victim "had written in her diary that [Petitioner]...had touched her breasts.... in her diary that she had told her mother."  (*Id.*).  The incident occurred when the Victim was in sixth grade.  (*Id.*).

[4]The CPS Letter is addressed to Petitioner and states, in pertinent part:
This letter is to notify you that the CPS investigation involving your family has been completed.  The sexual abuse allegation as to your step-child [name] has been unsubstantiated and your case has been closed at intake.
(Answer, Exh. K).

1    a psychologist's report and failure to obtain a controverting expert in a timely manner.

2    (Memorandum, (Doc. 1-1), p. 11).

3    In rejecting this claim, together with Petitioner's claim that trial counsel was

4    ineffective for failing to investigate the diary which was used against Petitioner at trial, the

5    trial court stated:

> As best as the Court can make out, the Petitioner claims that Trial Counsel
> failed to interview potentially exculpatory witnesses who could have shown
> that the Petitioner was investigated by CPS and that CPS determined that the
> sexual abuse allegation contained in the Victim's diary were unfounded, or
> alternatively that the handwriting in the diary did not belong to the Victim.
> The Petitioner asserts that proof CPS cleared him of any wrongdoing exists
> in a letter he received from CPS in 2001. The Court has reviewed the CPS
> letter in question and finds that Trial Counsel's failure to present witness
> testimony regarding the CPS investigation, the diary or the letter did not fall
> below a reasonable standard of professional competency because the letter
> is not clearly exculpatory. The CPS letter cited by the Petitioner states that
> sexual abuse allegations regarding the Victim could not be substantiated.
> This does not mean, as the Petitioner asserts, that the allegations were
> unfounded or invalid. Rather, it means that the investigators could not find
> sufficient evidence to corroborate the allegations and so the investigation
> was closed. The absence of corroborating evidence at the time of the CPS
> investigation does not prove the allegations were untrue, especially if, by the
> time of trial additional evidence substantiating the allegations had surfaced.
> Moreover, the letter makes no mention of the diary in question. If anything,
> the letter bolsters the credibility of the Victim-Witness and the diary entries
> adduced as evidence because it shows that the allegations of sexual abuse
> against the Petitioner were ongoing and not just an isolated event. Lastly,
> even if Trial Counsel's decision not to introduce the letter or testimony
> regarding the diary or the letter was unreasonable, the Petitioner cannot show
> that he was prejudiced. The evidence adduced at trial was sufficient to
> overcome whatever negligible exculpatory effect the letter or witness
> testimony regarding the investigation, the diary or the letter would have
> created, and thus, the outcome of Petitioner's trial would not have been
> different. Accordingly, the Petitioner is not entitled or relief on these
> grounds.

21   (Answer, Exh. N, pp. 3-4).

22   The Supreme Court has held that "counsel has a duty to make reasonable

23   investigations or to make a reasonable decision that makes particular investigations

24   unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 520, (2003). Although counsel's failure to

25   investigate crucial witnesses may indicate an inadequate investigation, "counsel need not

26   interview every possible witness to have performed proficiently." *Riley v. Payne*, 352 F.3d

27   1313, 1318 (9th Cir.2003); *see also United States v. Tucker,* 716 F.2d 576 (9th Cir.1983)

1   ("[T]he duty to investigate and prepare a defense is not limitless: it does not necessarily
2   require that every conceivable witness be interviewed or that counsel must pursue []every
3   path until it bears fruit or until all conceivable hope withers.[]") (internal quotation marks
4   and citation omitted). To determine whether the investigation was reasonable, the court
5   "must conduct an objective review of...[counsel's] performance, measured for
6   'reasonableness under prevailing professional norms,' *Strickland,* 466 U.S. at 688..., which
7   includes a context-dependent consideration of the challenged conduct as seen 'from
8   counsel's perspective at the time.' *id.* at 689...." *Wiggins,* 539 U.S. at 523; *see also*
9   *Rompilla v. Beard,* 545 U.S. 374, 381 (2005).

10   Further, to establish prejudice under *Strickland,* "with respect to defective
11   investigations, the test for prejudice is whether the noninvestigated evidence was powerful
12   enough to establish a probability that a reasonable attorney would decide to present it and
13   a probability that such presentation might undermine the jury verdict." *Mickey v. Ayers,*
14   606 F.3d 1223, 1236–37 (9th Cir. 2010) (citing *Wiggins*, 539 U.S. at 535). Therefore, to
15   establish prejudice based on counsel's failure to investigate or call a potential defense
16   witness, there must be evidence to show what significant and beneficial testimony the
17   witness would have provided. *See Dows,* 211 F.3d at 486; *Hendricks v. Calderon*, 70 F.3d
18   1032, 1042 (9th Cir.1995) (citing *James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994)).

19   The events giving rise to Petitioner's conviction occurred in 2003. That the
20   Victim's allegations could not be substantiated during the 2001 CPS investigation does not
21   mean that the allegations were in fact "untrue" as Petitioner maintains (*see* Petition, p. 12).
22   As the trial court pointed out, the discovery of additional evidence substantiating the
23   allegations before trial refutes any reliance on the earlier CPS investigation and 2001 letter.
24   Nor is there anything unreasonable about the trial court's astute observation that, if
25   anything, the investigation and letter bolstered the credibility of the diary and the Victim
26   because they showed the abuse was ongoing over a period of years. Moreover, the trial
27   court also reasonably concluded that Petitioner failed to establish prejudice resulting from
28   counsel's failure to interview the CPS witnesses about the 2001 investigation and letter in

1   light of the evidence adduced at trial.  That CPS closed its investigation in 2001 in no way

2   vitiates the evidence presented against Petitioner at trial.

3      Petitioner also claims that trial counsel was ineffective by failing to interview CPS

4   witnesses and the counselor and  psychologist from Counseling Consultants because they

5   would have provided "[c]rucial evidence" to discredit the diary.   (Petition, p. 12).

6   Petitioner asserts that he "gave these facts to my attorney...well in advance of the trial...."

7   (*Id.*).

8      "[W]hen the facts that support a certain potential line of defense are generally

9   known to counsel because of what the defendant has said, the need for further investigation

10  may be considerably diminished or eliminated altogether." *Strickland,* 466 U.S. at 691. An

11  attorney may make strategic choices based on defendant's own statements or actions. *Id.*

12  If Petitioner told counsel what the witnesses' likely testimony would be, which he did (*see*

13  Petition, p. 12), and counsel made a tactical decision not to interview or call witnesses

14  based on Petitioner's representations, such decisions would not entitle Petitioner to relief.

15  *Strickland*, 466 U.S. at 691; *Eggleston v. United States* , 798 F.2d 374, 376 (9th Cir. 1988)

16  (trial counsel need not interview witnesses whose account is fairly known to counsel).

17     Petitioner provides no reason why such investigation would have discredited the

18  diary.  Petitioner makes clear that defense counsel was aware that the Victim had

19  previously denied that the diary belonged to her, therefore, this information did not go

20  undiscovered.  Additionally, the Victim testified that she had previously denied that the

21  diary belonged to her during the 2001 CPS investigation "because she 'didn't really want

22  to make a big deal out of everything....'"  (Answer, Exh. I, p. 5 (citing 7/14/06 RT, pp. 5-8;

23  7/12/06 RT, pp. 43-45, 50)).   There is no showing suggesting that interviewing the

24  witnesses would have led to any further evidence on the issue or that such evidence would

25  have changed the outcome of trial.

26     Petitioner also asserts that he had been interviewed by a state psychologist.  He

27  argues that counsel was ineffective for failure to interview the psychologist, for failure to

28  review the psychologist's report, and for failure to timely obtain a controverting expert.

1    (Memorandum, pp. 11-12).    Although Petitioner raised this claim in his PCR Petition

2    (Answer, Exh. J, p. 18), the trial court did not specifically discuss the issue.  Nor does

3    Respondent specifically address this claim.  Where, the state court rejects "a federal claim

4    without expressly addressing that claim, a federal habeas court must presume that the

5    federal claim was adjudicated on the merits..." for AEDPA purposes. *Johnson* __ U.S. __,

6    133 S.Ct. at 1096; *Harrington,* __ U.S. __, 131 S.Ct. at 784-785.  Although the petitioner

7    may overcome this presumption in some circumstances, *see id.* __ U.S. __, 133 S.Ct. at

8    1098-99; *Harrington,* __ U.S. __, 131 S.Ct. at 785, Petitioner has not done so here.

9         Petitioner does not describe how the psychologist's interview or report factored into

10    his case.  Nor does he provide facts or theory to support the conclusion that counsel's

11    conduct on this issue fell below established norms and that such conduct resulted in

12    prejudice under *Strickland.*  It is well settled that "[c]onclusory allegations [of ineffective

13    assistance of counsel] which are not supported by a statement of specific facts do not

14    warrant habeas relief." *James*, 24 F.3d at 27; *Ortiz*, 149 F.3d at 933 (rejecting ineffective

15    assistance of counsel claim where petitioner failed "to indicate how he was prejudiced by

16    counsel's failure..." to conduct cross-examination on a specific issue).  On the instant

17    record, regardless whether this particular claim is reviewed applying AEDPA standards or

18    de novo, the claim lacks merit.[5]

19    _____

20    [5]In Ground 9, in part, Petitioner states that counsel was ineffective for failure to find
an "expert witness to refute states [sic] claims." (Petition, p. 14).  He provides no factual
21    basis for such a claim.  Instead his Ground 9 statement of supporting facts addresses his
contention that sentencing counsel was ineffective because he was new to the case.  (*Id.*).
22    Likewise, in Ground 10, in part, Petitioner claims that trial counsel was ineffective because
he "waited to the last minute to attempt to secure an expert witness to refute the states [sic]
23    assertions of his guilt and prove his actual innocence as...[to] []the charges in this matter."
(Petition, p. 15).  The statement of supporting facts for Ground 10 addresses what appears
24    to be an unrelated claim, addressed *infra*, that counsel was ineffective for failure to object
25    to the presentence report.  (*Id.*; *see also* Memorandum, pp. 17-19). Petitioner fails to supply
factual allegations sufficient to resolve a claim regarding counsel's alleged tardiness in
26    obtaining an expert witness.  To the extent that in Grounds 9 and 10, Petitioner is referring
27    to an expert to refute the state's psychologist, his claims fail for the same reasons that render
28    Ground 7 meritless. Additionally, in Ground 14, in part, Petitioner once again argues that

On the instant record, the state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law. Nor is there any showing that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner's claims of ineffective assistance of counsel fails on the merits.

**Ground 11**. Petitioner's Ground 11 initially reads as a claim of ineffective assistance of counsel for failure to protect Petitioner's right to have a jury determine aggravating factors that would enhance Petitioner's sentence.[6] (Petition, p. 16). However, the factual basis for that claim attacks trial counsel's failure to obtain a handwriting expert to challenge the authenticity of the Victim's diary during trial. (*Id.*; Memorandum (Doc. 1-1), pp. 19-20).

Petitioner argued during the state PCR proceeding that trial counsel was ineffective for failure to obtain a handwriting expert to discredit the diary entry evidence. The trial court rejected the claim as follows:

> The Court essentially repeats its earlier finding that the CPS letter proffered by the Petitioner here is not clearly exculpatory as it does not invalidate the diary entry in question. Given the evidence adduced at trial, the Court finds that Trial Counsel's decision not to contest the authenticity of the diary entry was reasonable. Simply because as the Petitioner asserts, a plausible alternative explanation for the incriminating evidence exists does not mean that Trial Counsel was obligated to present it. The selection of arguments and decisions as to which evidence is subject to legitimate challenge are reserved for trial counsel and the Court will not second guess those decisions merely because they achieved an unfavorable result for the Petitioner. The Petitioner is not entitled to a guaranteed outcome in his case, but rather to the effective assistance of competent counsel. There is no reason to believe that the Petitioner received anything less here. Furthermore, even if Trial Counsel's decision not to secure an expert witness was unreasonable, the Petitioner cannot show that he has been prejudiced. The Petitioner's

trial counsel was ineffective for failure to interview the state psychologist, review the report, and obtain a controverting expert in a timely manner. (Petition, p. 20; Memorandum, pp. 24-25). In Ground 15, he sets out a claim of ineffective assistance of counsel virtually identical to that in Ground 14 at page 20 of his Petition; however, he provides no facts to elaborate on his Ground 15 claim with regard to trial counsel. On the issue of counsel's performance pertaining to the state's psychologist, Ground 14 lacks merit for the same reasons as Ground 7. To any extent that Petitioner attempts to raise the same claim in Ground 15, it also lacks merit.

[6]Petitioner's claims of ineffective assistance of sentencing counsel are discussed *infra.*

- 20 -

1    assertion that expert witness testimony would have altered the outcome of his
2    trial is speculative. The record shows that the value of such testimony would
     have been negligible given that there was evidence authenticating the diary
3    entry as well as overwhelming evidence aside from the diary entry from
     which the jury could have convicted him. The Court therefore concludes that
     the Petitioner received the effective assistance of trial counsel and that he has
4    not been prejudiced. Consequently, the Petitioner is not entitled to relief.

5    (Answer, Exh. N, pp. 8-9).

6        "[T]he presentation of expert testimony is not necessarily an essential ingredient of

7    a reasonably competent defense." *Bonin v. Calderon,* 59 F.3d 815, 834 (9th Cir.1995).

8    "Few decisions a lawyer makes draw so heavily on professional judgment as whether or

9    not to proffer a witness at trial." *Lord v. Wood,* 184 F.3d 1083, 1095 (9th Cir.1999).  Here,

10   the diary entry at issue involved events occurring in 2001, long before the 2003 events at

11   issue in Petitioner's criminal proceeding.  Further, the Victim was questioned at trial about

12   her previous denial that she made the diary entry.   The diary entry was not the sole

13   evidence against Petitioner.  Nor was it the bulk of the evidence against Petitioner, given

14   that he was on trial for events occurring in 2003.  Thus, the trial court's finding that counsel

15   was not ineffective on this issue was reasonable.  Moreover, the trial court's conclusion that

16   Petitioner failed to demonstrate prejudice was also reasonable in light of he evidence

17   adduced at trial.  Petitioner's request for habeas relief  is without merit.

18   **GROUND 13.**  Like Ground 11, the violations alleged do not correlate to supporting factual

19   statement.  Petitioner states that counsel was ineffective for failing to object or otherwise

20   protect Petitioner's right to submit information that contradicted the pre-sentence report.

21   (Petition, p. 18).   However, Petitioner's factual statement argues that the trial court erred

22   when it denied Petitioner's request to change counsel.  (*Id.; see also* Memorandum, pp. 22-

23   24).   Petitioner contends that the denial of his request to change counsel forced him to

24   proceed with ineffective counsel who  failed to conduct interviews of CPS witnesses who

25   would discredit the diary and who would testify about the 2001 letter closing the CPS

26   investigation.  (Petition, p. 18; Memorandum, pp. 22-24).  Nor did counsel interview:

27   counselors; the Victim's friends or teachers who, according to Petitioner, would testify

28   about the Victim's propensity to lie; or the Victim's biological father or grandmother to

1  testify about the diary. (Petition, p. 18; Memorandum, pp. 22-24). According to Petitioner,

2  "the alleged victim in this case exhibited an inclination and propensity to rebel in all

3  instances against authority figures who sought to prevent activities she wished to indulge

4  in and in the instant case this was me." (Petition, p. 19).

5       In his PCR Petition, Petitioner alleged both the sentencing claim and the claim that

6  the trial court erred in denying Petitioner's request for counsel. (*See* Answer, Exh. J, pp.

7  6-7, 10-13).   With regard to the trial court's alleged error in denying change of counsel,

8  the trial court held that Petitioner was precluded from raising the issue because it should

9  have been raised on appeal. (Answer, Exh. N, p. 10). The court went on to reject "the

10  embedded ineffective assistance of counsel claims..." by

11  |       reiterat[ing] its finding that the CPS letter the Petitioner repeatedly refers to
12  |       in his Petition is not clearly exculpatory and it was not error to leave the
    |       letter out of evidence. Nor was it unreasonable for Trial Counsel to elect not
13  |       to secure witness testimony regarding the authenticity of the diary entry
    |       evidence. The Court presumes these decisions were matters of trial strategy
14  |       and it will not question Trial Counsel's judgment. In addition, the Petitioner
    |       has not shown that the witnesses he cites would have provided favorable
15  |       testimony, that the substance of the testimony they might have provided was
    |       not already covered by the testimony of other witnesses or via cross-
16  |       examination, or that the value of the evidence would not have been overcome
    |       by the weight of the prosecution's evidence. Consequently, even if it was
17  |       unreasonable not to interview or subpoena these witnesses, the Petitioner has
    |       not demonstrated that he has been prejudiced. Absent specific allegations
18  |       that the testimony of the potential witnesses would have been relevant,
    |       admissible, non-cumulative, and favorable to the Petitioner, the Court cannot
19  |       presume any prejudice resulted from their absence at trial. Lastly, even if the
    |       Court assumes that the potential witnesses' testimony would have been
20  |       favorable to the Petitioner, given the evidence of his guilt adduced at trial,
    |       the Court cannot say such evidence would have altered the outcome of the
    |       case. Consequently the Petitioner is not entitled to any relief on these
21  |       grounds.

22  (Answer, Exh. N, p. 10).

23       Petitioner raised the issue again in a Motion for Rehearing (Answer, Exh. O, p. 7),

24  Supplement to PCR Petition (Answer, Exh. P, pp. 4-5), and Second Supplement to PCR

25  Petition (Answer, Exh. R, pp. 6-7).   The trial court again pointed out that the issue of error

26  should have been raised on direct appeal and, because it was not, the claim was precluded

27  under Rule 32.2(a) of th Arizona Rules of Criminal Procedure. (Answer, Exh. S, pp. 2-3).

28       As discussed above, the appellate court denied relief because Petitioner failed to

1   explain how the trial court's decisions during  the PCR proceeding were erroneous.

2   (Answer, Exh. Y, p. 3).  Additionally, the appellate court adopted the trial court's "well-

3   reasoned minute entries" during the PCR proceeding.  (*Id.*).

4          As to Petitioner's claim of ineffective assistance of counsel, "[t]he appropriate

5   inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer

6   as such. If counsel is a reasonably effective advocate, he meets constitutional standards

7   irrespective of his client's evaluation of his performance." *United States v. Cronic,* 466

8   U.S. 648, 654 (1984) (citing *Jones v. Barnes,* 463 U.S. 745,(1983); *Morris v. Slappy*, 461

9   U.S. 1 (1983)). "It is for this reason that we attach no weight to...[the defendant's]...

10  expression of dissatisfaction[]" with counsel's performance.  *Cronic,* 466 U.S. at 654.

11         This Court has addressed and rejected Petitioner's claims regarding the diary, CPS

12  letter and investigation and witnesses regarding same, *see supra.*  As to the other interviews

13  Petitioner contends counsel should have conducted to attack the Victim's credibility, the

14  trial court's decision was not unreasonable given that Petitioner's claims are conclusory

15  and he fails to establish prejudice under *Strickland.*

16         Any argument regarding the  trial court's alleged error in denying Petitioner's

17  request to change counsel is precluded on independent and adequate state law grounds

18  given that the PCR court found the argument was waived under Arizona procedural rules

19  because Petitioner failed to raise it on direct appeal.  *See Cook,* 538 F.3d at 1026

20  ("Preclusion of issues for failure to present them at an earlier proceeding under Arizona

21  Rule of Criminal Procedure 32.2(a)(3) 'are independent of federal law because they do not

22  depend  upon  a  federal  constitutional  ruling  on  the  merits'") (footnote  omitted).

23  Additionally, Arizona courts have consistently applied Arizona's procedural rules to bar

24  further  review  of  claims  that  were  waived  at  trial,  on  direct  appeal,  or  in  prior

25  post-conviction proceedings. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that

26  Rule 32.2(a) is an adequate and independent procedural bar); *Cook,* 538 F.3d at 1026;

27  *Ortiz*, 149 F.3d at 931–32.  Nor can Petitioner overcome the procedural bar;  he cannot

28  show cause or prejudice given this Court's determination that the trial court reasonably

1    concluded that counsel's performance did not contravene *Strickland.*

2    **CLAIMS OF EQUAL PROTECTION VIOLATION: GROUNDS 7, 8, 9,  11, 14 & 15.**

3         In Grounds  7, 8, 9, 11, 14, and 15 Petitioner makes a passing reference that his

4    rights under the Equal Protection Clause were violated.  In his PCR Petition, Petitioner did

5    not specifically mention the Equal Protection Clause when arguing about ineffective

6    assistance of counsel.  (*See* Answer, Exhs. J, M, O, P, R).  Respondent does not discuss

7    equal protection claims, but, nonetheless, state that these grounds for relief are exhausted.

8    It is clear that Petitioner never apprised the state court that he was making a federal equal

9    protection argument and, thus, such a claim is procedurally defaulted.  Yet, it is arguable

10   that Respondent has waived this defense. *See Vang v. Nevada,* 329 F.3d 1069, 1073-74 (9th

11   Cir. 2003); *Franklin v. Johnson,* 290 F.3d 1223, 1229-31 (9th Cir. 2002).

12        "The Equal Protection Clause of the Fourteenth Amendment commands that no

13   State shall 'deny to any person within its jurisdiction the equal protection of the laws,'

14   which is essentially a direction that all persons similarly situated should be treated alike."

15   *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v.*

16   *Doe,* 457 U.S. 202, 216 (1982)).

17        In Ground 11, Petitioner also states that trial counsel was aware that the Victim's

18   biological father "was racially biased against me because of my ethnic background and

19   against the biological mother because she had dared to enter into a relationship with a man

20   of Mexican decent [sic]." (Petition, p. 16).  Petitioner made a similar statement in his PCR

21   Petition when challenging counsel's failure to call a handwriting expert.  (Answer, Exh. J,

22   p, 13).  To any extent that Petitioner attempts to bootstrap an equal protection claim on the

23   alleged biases of the Victim's biological father, such an effort is futile given that Petitioner

24   has failed to allege or show that the State acted with any such bias.

25        In Grounds 7, 8, 9, 11, 14 and 15, Petitioner's allegations regarding counsel's

26   alleged failures in no way substantiate an equal protection claim, nor does he provide any

27   explanation as to why they should.  The bare assertion that his right to equal protection was

28   violated is insufficient for habeas relief.  *See* Rule 2, Rules Governing §2254 Cases, 28

U.S.C. foll. 2254 (requiring petition to state facts to support each claim); *Greenway v. Schriro,* 653 F.3d 790, 804 (9th Cir. 2011) ("[Petitioner's] cursory and vague claim cannot support habeas relief."). Petitioner's equal protection claims should be dismissed as vague, conclusory and unsubstantiated by any factual or legal statement.  Morever, to any extent that Petitioner  states sufficient facts to support an equal protection claim in Ground 11, such claim is wholly without merit on the facts presented when reviewed under either the AEDPA standard or de novo.

**GROUND 8**

Petitioner claims that trial counsel was ineffective for failing to "follow-up and i[n]vestigate the evidence available which would have allowed him to..." refute officers' testimony regarding Petitioner's contention that his *Miranda* rights were violated. (Petition, p. 13).  Petitioner's argument primarily focuses on his encounter with the police which he claims violated his *Miranda* rights.  (*See* Memorandum, pp. 12-16).  During the PCR proceeding, the trial court rejected Petitioner's claim of ineffective assistance of counsel on this issue as follows:

> The Court had thoroughly reviewed the record and notes that Trial Counsel filed a Motion to Suppress Statements on October 11, 2005. In his Motion, Trial Counsel advanced the very same arguments the Petitioner made here. On November 10, 2005, the Trial Counsel heard oral argument on the Motion. The minute entry for that hearing reflects the court confirmed that it had viewed portions of the videotape of the Petitioner's interrogation and that based on some discrepancies with the interview transcript, it would take the matter under advisement.  On January 9, 2006, the Trial court issued a detailed ruling where it found that the Petitioner's *Miranda* rights were not violated and that there was no basis for the suppression of the Petitioner's incriminating statements.   The Trial Court then denied the Petitioner's Motion. Given these facts, this Court cannot find any basis whatsoever for the Petitioner's ineffective assistance of counsel claim. Trial Counsel clearly raised the issue in his written motion and at oral argument.  That the Trial Court issued an unfavorable ruling does not meant that Trial Counsel was ineffective.  Indeed, the Court finds that Trial Counsel's actions met a reasonable standard of professional competency and that the Petitioner received the effective assistance of counsel.  Trial Counsel's actions far exceeded the Petitioner's assertion that he merely raised a *pro forma* objection to the evidence at issue and the Court is not sure what more Petitioner could expect.  Accordingly, the Petitioner's claim is wholly without merit and he is not entitled to relief on these grounds.

(Answer, Exh. N, pp. 4-5 (footnote omitted)).  The trial court also noted that defense

1  counsel had attached to the motion to suppress a copy of the transcript of Petitioner's

2  interrogation.  (*Id.* at p. 5, n.4).

3        The record is clear that trial counsel filed a motion to suppress statements and the

4  matter proceeded to evidentiary hearing where counsel cross-examined the testifying

5  officers and held the state to its burden in establishing the admissibility of the statements.

6  (*See* Answer, Exh. C (transcript of motion to suppress hearing); *see also* Answer, Exh. B

7  (minute entry denying motion to suppress)).  Petitioner does not suggest what evidence trial

8  counsel's alleged failure to investigate would have uncovered or that such evidence would

9  have affected the outcome of the suppression hearing.  Conclusory allegations will not

10  support a claim of ineffective assistance of counsel.  *See James*, 24 F.3d at 26-27.

11  Accordingly, the state court's decision was not contrary to, nor an unreasonable application

12  of, clearly established federal law.  Nor is there any showing that the state court's decision

13  was based on an unreasonable determination of the facts in light of the evidence presented

14  in the state court proceedings.

15  **CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING: GROUNDS 9, 10, 11,**

16  **12, 13, 14, 15.**

17        As discussed in detail below, Petitioner raises several claims of ineffective

18  assistance of counsel at sentencing.[7]  Petitioner cannot establish that state court's rulings

19  on his claims of ineffective assistance of sentencing counsel were contrary to, or an

20  unreasonable application of, clearly-established Supreme Court precedent because "there

21  is no clearly established..." federal law as determined by the Supreme Court regarding the

22  standard for ineffective assistance of counsel in noncapital sentencing cases.

23  _____

24      [7]The record reflects that the Victim's mother and the Victim submitted letters to the court requesting leniency at sentencing. (*See* Exh. D, p. 7 (Doc. 11-4, p. 8)). However, the

25  prosecutor pointed out that recorded jail calls between Petitioner and the Victim's mother revealed Petitioner's instruction that the Victim's mother "make sure that [the Victim] writes

26  a letter on [Petitioner's]...behalf and he want to be able to approve it– read it to make sure it's to his advantage.  And that it is [the mother's]...obligation to shake the shit out of [the

27  Victim]...." (*Id.* at pp. 7-8 (Doc. 11-4, pp. 9-10)).  At sentencing, Petitioner maintained his

28  innocence.  (*Id.* at p.10 (Doc. 11-4, p. 11)).

*Cooper–Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir.2005); *see also Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). When the Supreme Court established the test for ineffective assistance of counsel claims in *Strickland*, the Court expressly declined to "consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance." *Coopersmith,* 397 F.3d at 1244. The Supreme Court has yet to decide what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context. *See id.* Because there is no clearly established federal law in this context, Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(1) with respect to these claims. *See Id.*

In resolving Petitioner's claims, the state court applied *Strickland*. The Ninth Circuit has stated that "even though the *Strickland* standard does not by necessity apply to the noncapital sentencing context, the [state]...courts were nonetheless free to adopt that standard for use in this context." *Davis,* 443 F.3d at 1158. Further, even if *Strickland* was the applicable standard, as discussed below, the state court's ruling was not an unreasonable application of *Strickland,* nor was the state court's decision based on a determination of the facts in light of the evidence presented in the state court proceeding.

**GROUND 9.** Petitioner argues that sentencing counsel was ineffective in light of the fact that he was appointed at "the eleventh hour....Counsel was neither prepared to present facts or information favorable to the [P]etitioner, nor did he have the knowledge of the concise case history and background to render effective assistance...." (Petition, p. 14; *see also* Memorandum, pp. 16-17).

The trial court rejected the claim as follows:

> [T]he Court is compelled to disagree with the Petitioner's assertion that he was assigned substitute counsel for purposes of sentencing 'at the eleventh hour.'" In reality, Mr. Roach [sentencing counsel] was appointed as the Petitioner's sentencing counsel over thee and one[-]half months before the Petitioner was actually sentenced. During those 106 days between his appointment and the Petitioner's actual sentencing, the Court finds that Mr. Roach had ample time to familiarize himself with the facts of the Petitioner's case. Moreover, the Petitioner's conclusory assertions aside, there is nothing in the record which indicates that Mr. Roach was not fully prepared to represent the Petitioner at his sentencing. In fact, the record reveals the contrary. Mr. Roach sought additional time, raised a challenge and

1  conducted an investigation into alleged juror misconduct, and presented
2  actual and relevant mitigating evidence at Petitioner's sentencing. Clearly,
   Mr. Roach acted as more than a neutral observer.

3  (Answer, Exh. N, p. 7; *see also* Answer, Exh. D (transcript of sentencing)).

4  Petitioner provides only conclusory statements that counsel failed to present

5  mitigating evidence. His other statements regarding ineffectiveness of counsel at

6  sentencing rehashes claims raised elsewhere in his Petition that counsel failed to argue that

7  a jury should determine aggravating factors, failed to seek remand based on an error in the

8  testimony before grand jury evidence, which are addressed in this Report an

9  Recommendation, *infra*. Additionally, Petitioner argues that sentencing counsel was

10 ineffective because Petitioner was not guilty of the charges.

11 Petitioner has provided no basis on which to conclude that sentencing counsel was

12 ineffective for failure to be adequately prepared for sentencing. Therefore, the state court's

13 decision on this issue was neither contrary to, nor an unreasonable application of

14 *Strickland.* Nor was the state court's decision based on an unreasonable determination of

15 the facts in light of the evidence presented in the state court proceeding.

16 **GROUND 11.** Petitioner claims that sentencing counsel was ineffective for failure to protect

17 Petitioner's right to have a jury find aggravating factors. Petitioner provides no facts to

18 support his allegations. The trial court denied Petitioner's claim on this issue, *inter alia,*

19 because "no aggravating factor was alleged, nor was an aggravated sentence imposed at the

20 Petitioner's sentencing. As a result, Sentencing Counsel need not have sought a jury

21 determination of aggravating factors and it was not ineffective assistance that he failed to

22 do so." (Answer, Exh. N, p. 7). On this record, Petitioner cannot establish that the state

23 court's ruling on this issue was contrary to, or an unreasonable application of *Strickland*

24 given that no aggravating factors were alleged, found, or used to impose Petitioner's

25 sentence.

26 **GROUNDS 12, 13, 14, & 15.** In Ground 12, Petitioner claims that sentencing counsel was

27 ineffective because he failed "to submit  information that contradicted the biased findings

28 of the pre-sentence report which prejudiced  the petitioner...." (Petition, p. 17). The

statement of supporting facts for Ground 12 do not discuss Petitioner's sentencing claim; instead, the statement addresses claims of ineffective assistance of counsel for failure to seek remand to the grand jury, which is discussed *infra.* (*See id.*; *see also* Memorandum, pp. 20-22). In Ground 13, Petitioner essentially raises the same claim he raises in Ground 12. (*See* Petition, p. 18 (claiming sentencing counsel was ineffective by failing "to object or other-wise [sic] protect [Petitioner's] right to submit information that contradicted the biased findings of the pre-sentence report...."). Like Ground 12, Petitioner's supporting factual statement does not address this claim, but instead challenges actions of trial counsel on unrelated matters. Additionally, in Ground 14, Petitioner asserts that sentencing counsel was ineffective for failure to call character witnesses, present mitigating factors, and "object to the introduction of the presentence report...even though counsel was aware that the petitioner had mitigating facts to controvert the alleged aggravating facts...." (Petition, p. 20). Petitioner raises similar claims in Ground 15.[8] (Petition, p. 21; Memorandum, pp. 26-27).

In rejecting the claim of ineffective assistance of sentencing counsel, the trial court stated:

> [T]he Petitioner asserts that he received the ineffective assistance of Sentencing Counsel for his failure to object to the use of the presentence report and his failure to present certain mitigating evidence. Specifically the Petitioner claims that Mr. Roach failed to call character witnesses and other witnesses who could have given favorable testimony at his sentencing. The Petitioner argues that presentation of these witnesses would have resulted in the imposition of a mitigated sentence.
>
> As explained above, the Petitioner's claim lacks the specificity necessary to support a valid claim of ineffective assistance of counsel. In addition, the Petitioner's conclusion that the outcome of his sentencing would have been different is speculative and he had not demonstrated any prejudice. The Court disagrees with the Petitioner's contention that it is ineffective assistance of sentencing counsel to fail to call all available witnesses who might offer mitigating evidence. As explained above, sentencing counsel need only present available *pertinent* mitigating

---

[8]Petitioner's Ground 15 claim of ineffective assistance of sentencing counsel is set forth in the statement of supporting facts of his Petition and in his Memorandum. In the statement of claim portion of the Petition, Petitioner sets forth virtually the same claim of ineffective assistance of trial counsel that he stated in the same portion of Ground 14. He provides no facts to support such a claim.

evidence..[*State v.*] *Carriger,* 132 Ariz. [301] at 304, 645 P.2d [816] at 819 [(1982)] (emphasis added).  The record in Petitioner's case shows that Mr. Roach presented mitigating evidence in the form of letters from family members which were given to the judge prior to the imposition of sentence. Since the Petitioner has not explained what advantage additional testimony might have provided, the Court must conclude that Sentencing Counsel's decision not to present such witnesses was reasonable and that the Petitioner has not been prejudiced.

   With respect to the Petitioner's assertion that Sentencing Counsel failed to object to unfavorable facts in the presentence report, the Court similarly finds the absence of specificity required to sustain an ineffective assistance of counsel claim.  As explained above, presentence reports often contain a mix of favorable and unfavorable facts about the defendant and thus prejudice cannot be presumed from their use.  "The weight to be given the [presentence] report is for the trial judge and we need not assume he was adversely influenced by any statement which might have been improper." *State v. Dixon,* 21 Ariz. App. 517, 521 P.2d 148, 150 (1974).  Sentencing Counsel is only obligated to challenge the admission of aggravating evidence where reasonably possible.  *Carriger,* 132 Ariz. at 304, 645 P.2d at 819. Absent an explanation from the Petitioner as to which facts in the presentence report were subject to legitimate challenge, the Court finds that Mr. Roach's failure to object was reasonable.  Accordingly, the Petitioner received the effective assistance of sentencing counsel and he has not been prejudiced.  Relief is therefore, not warranted on these grounds.

(Answer, Exh. N, pp. 7-8).

Petitioner's conclusory allegations fail to substantiate his claim of ineffective assistance of sentencing counsel. The state court's decision was neither contrary to, nor an unreasonable application of *Strickland.*  Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**GROUND 12.**

In addition to arguing ineffective assistance of sentencing counsel in Ground 12, *see supra,* Petitioner also argues that trial counsel was ineffective for failing to "challenge the fact that the state relied upon an erroneous statement of the detective in the grand jury proceedings...." (Memorandum, p. 20; *see also* Memorandum, pp. 20-22; Petition, p. 17).

When Detective Knuth testified before the grand jury, he stated that Petitioner's "son" saw Petitioner enter the Victim's bedroom prior to the sexual abuse which resulted in the Victim calling 911. (Petition, p.17; *see also* Answer, Exh. L, p. 6 (indicating that the detective testified that Defendant's son, "Sam", was the witness)).  Instead, it was

1    Petitioner's daughter, Samantha, who witnessed this.  (*See* Answer, Exh. N, p.9 (Samantha

2    testified at trial that she witnessed Petitioner entering the victim's room prior to the sexual

3    abuse taking place); *see also* Answer, Exh. L, p. 6;  Answer, Exh. I, p. 7 (summarizing

4    Samantha's testimony)).

5      The state court rejected Petitioner's claim as follows:

6       The Court notes at the outset that a trial jury convicted the Petitioner of the
     charged offenses on the standard of proof of beyond a reasonable doubt.

7    Thus, even if it was unreasonable for Trial Counsel not to have filed a
     motion for remand, the Petitioner has not been prejudiced as the lower

8    standard of probable cause necessary to obtain an indictment from the grand
     jury was clearly met.  The Court also notes that the Petitioner fails to

9    mention that his daughter did in fact testify that she witnessed him enter the
     Victim's bedroom prior to the sexual abuse taking place.  Thus, Detective

10   Knuth's testimony that Petitioner's son was the witness, while erroneous as
     to the identity of the witness was not erroneous as to the Petitioner's actions

11   leading up to the offense.  Since the identity of the witness reaches a
     collateral issue, the erroneous testimony did not amount to fundamental

12   error.  Because the Petitioner was not prejudiced by the erroneous testimony
     and a motion to remand would have been denied, it was reasonable for Trial

13   Counsel not to have raised the issue.  Thus, the Petitioner has not presented
     a colorable claim of ineffective assistance of counsel and he is not entitled

14   to relief.

15   (Answer, Exh. N, pp. 9-10).

16     Under Arizona law, a  defendant may challenge the grand jury's finding of probable

17   cause on only two grounds: (1) an insufficient number of jurors concurred in the indictment

18   or (2) the proceeding denied the defendant a substantive procedural right.  *Maretick v.*

19   *Jarrett*, 204 Ariz. 194, 197, 62 P.3d 120, 123 (2003).  "In particular, due process...requires

20   the use of an unbiased grand jury and a fair and impartial presentation of the evidence."

21   *Crimmins v. Superior Court,* 137 Ariz. 39, 41, 668 P.2d 882. 888 (1983) (citation omitted).

22   Whether to remand a case to the grand jury is a matter within the trial court's discretion.

23   *Francis v. Sanders*, 222 Ariz. 423, 426, 215 P.3d 397, 400 (App. 2009) (*citing Maretick,*

24   204 Ariz. at 195, 62 P.3d at 121). The Arizona Supreme Court has directed remand to the

25   grand jury where the court "believe[d] that the grand jury's inability to determine the case

26   based on accurately depicted facts and the applicable law flawed their decision...."

27   *Crimmins,* 137 Ariz. at 43, 668 P.2d at 886.

28     Although the detective incorrectly identified the witness as Petitioner's son, rather

1   than his daughter, the substance of the testimony was correct–Petitioner was witnessed

2   entering the Victim's bedroom prior to the sexual abuse taking place.  This Court agrees

3   with the trial court that the identity of the witness who saw Petitioner enter the Victim's

4   bedroom was a collateral matter and would not have warranted granting remand in this

5   case.  Further, even if a remand had been ordered, but for the identity of the witness, the

6   testimony would have been the same–the Petitioner's child saw him enter the Victim's

7   room prior to the sexual abuse taking place.  There is no suggestion in the record that the

8   grand jury's outcome would have been different had it been Petitioner's daughter, rather

9   than his son, who witnessed this.  Given the unlikely probability of success of such a

10  motion, counsel was not ineffective for failure to seek remand on this issue. Consequently,

11  the state court's decision was not contrary to, nor an unreasonable application of,

12  *Strickland*.  Nor was the state court's decision based on an unreasonable determination of

13  the facts in light of the evidence presented in the state proceeding.  Ground 12 is without

14  merit.

15  **CONCLUSION**

16      For the foregoing reasons Grounds 1 through 5 and portions of Ground 6 should be

17  dismissed as procedurally defaulted and the portion of Ground 6 alleging violation of

18  Petitioner's right to effective of assistance of counsel should be denied on the merits.

19  Additionally, the portion of Ground 13 alleging that the trial court erred in denying

20  Petitioner's request to change counsel should also be dismissed as procedurally defaulted.

21  Further, Grounds 7 through 15 should be dismissed for failure to raise a cognizable claim

22  under the Fifth Amendment Due Process Clause and should be denied on the merits to the

23  extent Petitioner raises claims of ineffective assistance of counsel.  Moreover,  Petitioner's

24  bare assertions of violation of his right to equal protection in Grounds 7, 8, 9, 11, 14, and

25  15 should also be dismissed and, alternatively, Ground 11 should be denied on the merits

26  if the Court determines that Petitioner has sufficiently alleged such a claim.

27  **RECOMMENDATION**

28      For the foregoing reasons the Magistrate Judge recommends that the District Court,

after its independent review, dismiss and deny Petitioner's Petition for Writ of Habeas Corpus.  The Petition should be dismissed as follows:

    (1)    as procedurally defaulted with regard to Grounds 1 through 5, the portion of Ground 6 not pertaining to Petitioner's claim of interference with his right to effective assistance of counsel, and the portion of Ground 13 regarding Petitioner's claim that the trial court erred in denying Petitioner's request to change counsel;

    (2)    as noncognizable to the extent Petitioner claims violation of his Fifth Amendment right to due process in grounds 7 through 15;

    (3)    to the extent Petitioner claims a violation of his right to equal protection in Grounds 7, 8, 9, 14, and 15.

The Petition should be denied on the merits:

    (1)    to the extent Petitioner claim of interference with his right to effective assistance of counsel in Ground 6;

    (2)    to the extent Petitioner claims his counsel was ineffective in Grounds 7 through 15.

    Additionally, Ground 11 should be dismissed with regard to Petitioner's equal

////
////
////
////
////
////
////
////
////
////
////
////

1   protection claim or, alternatively, denied on the merits to the extent that the Petition may

2   be read as alleging facts sufficient to establish such a claim.

3         Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil

4   Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of

5   Arizona, any party may serve and file written objections within fourteen (14) days after

6   being served with a copy of this Report and Recommendation.  A party may respond to

7   another party's objections within fourteen (14) days after being served with a copy.

8   Fed.R.Civ.P. 72(b)(2).  No replies to objections shall be filed unless leave is granted from

9   the district court to do so. If objections are filed, the parties should use the following case

10   number: **CV 11-716-TUC-JGZ.**

11         DATED this 16th day of June, 2014.

**CHARLES R. PYLE**
**UNITED STATES MAGISTRATE JUDGE**